UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TIMOTHY PECK, Acting
Regional Director of
Region 20 of the National
Labor Relations Board,
for and on behalf of th4e
NATIONAL LABOR RELATIONS
BOARD,

                                      NO. CIV. S-09-1600 LKK/JFM

          Petitioner,

     v.
                                      O R D E R

HORIZONS YOUTH SERVICES, LLC,


          Respondent.

_____/

     Petitioner, the Acting Regional Director of Region Twenty of

the National Labor Relations Board ("Petitioner"), petitions this

court for temporary injunctive relief pursuant to section 10(j) of

the National Labor Relations Act, 29 U.S.C. § 160(j) (2006).  This

court resolves the petition on the papers and oral argument.  For

the reasons stated below, this petition is granted.

////

# I.  BACKGROUND

The National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 et seq., governs certain employees' rights to organize and collectively bargain with employers.  When employees or their representatives contend that an employer has violated the NLRA, this charge is investigated and prosecuted in an administrative process before the National Labor Relations Board ("NLRB").  In this case, petitioner is prosecuting a charge that respondent Horizons Youth Services is a "successor employer" obliged to recognize prior collective bargaining units, and that respondent has violated this obligation.

Section 10(j) of the NLRA provides that during the pendency of such a prosecution, the appropriate regional director of the NLRB may petition in a district court for temporary injunctive relief.  28 U.S.C. § 160(j).  Such a petition is presently before the court.[1]

## A.   Factual Background

The facts in this case center on the Sacramento Job Corps. Center, hereinafter the Center.  The Center is funded by the

_____

[1]  Petitioner filed a motion to try the section 10(j) injunction petition on the basis of the administrative hearing record and affidavits/declarations regarding irreparable harm. Pet'r. Mot. to Try Section 10(j) Inj. Pet. on Basis of Administrative Hr'g R., filed June 8, 2009.  HYS did not file an opposition to this motion.  Further, in its opposition to the motion for injunctive relief, HYS itself relies upon the administrative hearing record.  The court interprets this as a non-opposition to Petitioner's motion.  Norelli v. Fremont-Rideout Health Group, 2009 U.S. Dist. LEXIS 29253, 1-2 (E.D. Cal. 2009).  Accordingly, Petitioner's motion to try the matter on the record of the hearings is GRANTED.

United States Department of Labor, and "provide[s] disadvantaged
youth enrolled at ages 16-24 with a comprehensive range of
career development services leading to employment and long-term
attachment to the workforce."  Pet'r's  Pet. For Inj., Ex. H at
4.

Prior to July 1, 2008, the Dept. of Labor contracted the
operation of the Center to Career Systems Development
Corporation ("Career Systems"), a private company.  Beginning in
1998, Career Systems recognized the Sacramento Corps. Federation
of Teachers, AFT Local 4986 ("Union") as the exclusive
collecting bargaining representative of its employees in two
bargaining units.  The first of these was made up entirely of
"residential advisor" employees (the "RA Unit").  The second is
referred to as the "instructors unit," and included various
types of instructors, counselors and career transitions
specialists.  The two units were covered by separate collective-
bargaining agreements with Career Systems, with the most recent
agreement for each unit having a term of June 22, 2006 to June
22, 2009.

On or about May 7, 2008, the DOL declined to renew the
contract with Career Systems, instead awarding the contract to
operate the Center to Horizons Youth Services ("HYS") for a two
year term, beginning on July 1, 2008.  The contract was nearly
identical to the contract that Career Systems had with the DOL.
Both HYS and Career Systems were to "provide material, services,
and all necessary personnel to operate a Job Corps. center."

1  Pet'r's Pet. For Inj., Ex. H at 4.  HYS has assumed full

2  operation of the Center without any break in service to

3  trainees.  Hr'g Tr. 10, 65.

4      Immediately after securing the contract, HYS entered into a

5  subcontract with Insights Training Group ("Insights") to provide

6  certain staff for the Center, to be effective from July 1, 2008

7  through December 31, 2008.  J. Ex. 4 at Article 4.  Pursuant to

8  this subcontract, Insights provided staff in the counseling,

9  career preparation and career transition programs.  When Career

10 Systems had operated the Center, employees in these positions

11 were included in the Instructors bargaining unit.  Hr'g Tr. at

12 34.  This subcontract terminated as expected, and since January

13 1, 2009, HYS has been the sole employer of these employees and

14 all other employees previously included in the RA and Instructor

15 units.  General Counsel Ex. 13.

16     On July, 9, 2008, the Union sent a letter to the HYS center

17 director demanding that HYS recognize the Union's status as the

18 exclusive bargaining agent for all instructors and RA's at the

19 Center.  Id.  No separate demand was made of Insights.

20 Petitioner states that this is because the Union was unaware of

21 the subcontract with Insights until January 2009, by which time

22 that subcontract had terminated.  Hr'g Tr. 39.  However, after

23 Insights ceased employing staff at the Center, the Union renewed

24 its demand to HYS for recognition and bargaining by a letter

25 dated April 24, 2009.  General Counsel Ex. 13., Hr'g Tr. 39-40.

26 HYS refused the July 2008 demand, General Counsel Ex. 5, and has

1  not responded to the January 2009 demand, Hr'g Tr. 42.

2  **B.   Procedural and Regulatory Background**

3       In September of 2008, the Union filed a charge with the
4  NLRB alleging that HYS's refusal to recognize the Union was an
5  unfair labor practice in violation of the NLRA.  This initiated
6  the NLRA's adjudication process leading to the present petition
7  for temporary relief.

8       **1.   The NLRA Adjudication Process**

9       Claims of NLRA violations are both investigated and
10  adjudicated by the NLRB, with different persons within the NLRB
11  playing different roles.  The first step in the process is for
12  the private party to file a charge alleging an unfair labor
13  practice with a regional or resident office of the NLRB.  29
14  U.S.C. § 160(b), 29 C.F.R. § 101.2.  After an investigation, the
15  NLRB Regional Director--the petitioner in this case--determines
16  whether a complaint should issue against the charged party.  29
17  U.S.C. § 160(b), 29 C.F.R. § 101.8.  At this stage of the
18  proceedings, the Regional Director and office serve as a neutral
19  party.

20       If the Regional Director determines that a complaint should
21  issue, an attorney from the NLRB's General Counsel's office
22  prosecutes the case.[2]  29 U.S.C. §§ 153(d), 160(b); 29 C.F.R. §
23  101.10(a); see also, Resp't's Ex 1-4 (complaints filed by the
24  General Counsel in this case).  This attorney presents the case

25  _____
     [2] The Regional Director may choose to deviate with this
26  ordinary process.  29 C.F.R. § 101.4.  No such departure from
     ordinary procedures occurred in this case.

1  in an adversarial hearing before an administrative law judge

2  ("ALJ").  See 29 C.F.R. §§ 101.10-101.11.  The charged party--in

3  this case, HYS--represents itself.  29 U.S.C. § 160(b).  The

4  proceedings before the ALJ generally follow traditional judicial

5  processes, although it is typical for the ALJ to request final

6  briefing after oral argument has concluded.  29 U.S.C. § 160(b).

7  Because of this practice, some cases refer to matters as being

8  "fully litigated" when these hearings are completed even though

9  the final round of briefing has not yet been completed.  See,

10  e.g., Norelli, 2009 U.S. Dist. LEXIS 29253, 1-2.

11      The ALJ issues a proposed "findings and determination" for

12  review by the five member board that is the NLRB.  29 U.S.C. §§

13  153(a), 160(c).  The General Counsel, the charged party, and the

14  charging party may object to this recommendation before the

15  Board issues a final decision.  If an appeal of the Board's

16  determination is sought, this appeal is heard directly by the

17  Federal Courts of Appeals.  29 U.S.C. § 160(f).

18      In this case, the Regional Director determined that a

19  complaint should issue, and the General Counsel filed a

20  compliant on September 30, 2008.  See Resp't's Ex 1.  This

21  complaint was dismissed, but after an appeal, an amended

22  complaint was issued on April 10, 2009.  See Resp't's Ex 2, 3,

23  4.  The details of the proceedings prior to the amended

24  complaint are not relevant for purposes of the instant petition.

25  The amended complaint alleges that HYS violated sections 8(a)(1)

26  and (8)(a)(5) of the NLRA.  Section 8(a)(1) prohibits employers

6

1  from "interfer[ing] with, restrain[ing], or coerc[ing] employees

2  in the exercise of the rights guaranteed in section 7,"

3  including "the right to self organization [and] . . . to bargain

4  collectively through representatives of their own choosing."  29

5  U.S.C. §§ 157, 158(a)(1).  Section 8(a)(5) provides that it is

6  "an unfair labor practice for an employer . . . to refuse to

7  bargain collectively with the representatives of his

8  employees[.]"  29 U.S.C. § 158(a)(5).  Hearings on this

9  complaint were heard before the ALJ on May 6, 2009, and final

10  briefs were due on June 9th, 2009.  The ALJ has not yet issued a

11  proposed decision.

12      **2.   Interim Relief under The NLRA**

13      Section 10(j) of the NLRA allows the NLRB to seek interim

14  injunctive relief once a complaint has been filed.  This section

15  provides that:

16          the Board shall have power, upon issuance of
            a complaint as provided in subsection (b)
17          charging that any person has engaged in or
            is engaging in an unfair labor practice, to
18          petition any district court . . . for
            appropriate temporary relief or restraining
19          order.  Upon the filing of any such petition
            the court shall cause notice thereof to be
20          served upon such person, and thereupon shall
            have jurisdiction to grant to the Board such
21          temporary relief or restraining order as it
            deems just and proper.

22

23  NLRA § 10(j), 29 U.S.C. § 160(j).  Under the NLRB's procedures,

24  the initial decision as to whether to seek interim relief is

25  made by the Regional Director.  If a regional director

26  determines that Section 10(j) relief should be sought, a

7

1    recommendation will be given to the General Counsel's Injunction

2    Litigation Branch.  National Labor Relations NLRB Case Handling

3    Manual, Part I, Unfair Labor Practice Proceedings 10310.3(a).

4    If General Counsel agrees, the recommendation will be given to

5    the Board for consideration.  Id.  Thus, when a petition for

6    interim relief is filed, the Regional Director, the General

7    Counsel, and the Board have all concurred in the determination

8    that the request is warranted.

9        Injunctive relief issued as a result of a Section 10(j)

10   petition expires when the Boards final decision is rendered.

11   Id. at 10314.  At that time, if the Board deems that injunctive

12   relief is still necessary, the Board must ask the appropriate

13   court of appeals for injunctive relief pursuant to Section 10(e)

14   of the Act, 29 U.S.C. § 160(e).

15                          **II. STANDARD**

16       When a petition for relief under Section 10(j) of the

17   National Labor Relations Act is filed, the court should grant

18   temporary relief "as it deems just and proper."  NLRA § 10(j),

19   29 U.S.C. § 160(j).  Like other forms of interim relief, an

20   injunction issued under this section serves to preserve the

21   status quo ante litem pending final action by the Board.  Scott

22   v. Stephen Dunn & Assocs., 241 F.3d 652, 660 (9th Cir. 2001).

23       To determine whether an injunction is "just and proper,"

24   "district courts should consider traditional equitable

25   principles, bearing in mind that the underlying purposes of §

26   10(j) are to protect the integrity of the collective bargaining

                                   8

1  process and to preserve the NLRB's remedial power while the

2  Board resolves an unfair labor practice charge." Miller v. Cal.

3  Pac. Med. Cent., 19 F.3d 449, 452 (9th Cir. 1994).  The Supreme

4  Court recently explained under these equitable criteria, a party

5  seeking interim relief must show that "[1] he is likely to

6  succeed on the merits, [2] that he is likely to suffer

7  irreparable harm in the absence of preliminary relief, [3] that

8  the balance of equities tips in his favor, and [4] that an

9  injunction is in the public interest." Winter v. Natural Res.

10  Def. Council, Inc., ___ U.S. ___, 129 S. Ct. 365, 374 (2008).

11      On the merits factor, on a Section 10(j) petition, the

12  Board receives considerable deference.  "In assessing whether

13  the Board has met its burden [under these factors], it is

14  necessary to factor in the district court's lack of jurisdiction

15  over unfair labor practices," and the fact that "the Board's

16  [final] determination on the merits will be given considerable

17  deference" by the court of appeals. Miller, 19 F.3d at 460

18  (citing NLRB v. City Disposal Sys., Inc., 465 U.S. 822, 829

19  (1984)).  Because of the deference accorded to the Board's

20  interpretation of the NLRA, the "Board can make a threshold

21  showing of [the] likelihood of success by producing some

22  evidence to support the unfair labor practice charge, together

23  with an arguable legal theory." Id.; but see Overstreet v.

24  United Bhd. of Carpenters & Joiners of Am., Local 1506, 409 F.3d

25  1199, 1208 (9th Cir. 2005) (where the merits implicated First

26  Amendment issues to which the Board's determination would not

9

1   receive deference on appeal, no deference owed on a Section

2   10(j) petition).  Since the Board is primarily "responsible for

3   declaring federal labor policy . . . 'even on an issue of law,

4   the district court should be hospitable to the views of the

5   General Counsel, however novel.'"  <u>Miller</u>, 19 F.3d at 460

6   (quoting <u>Danielson v. Joint Bd. of Coat, Suit & Allied Garment</u>

7   <u>Workers' Union</u>, 494 F.2d 1230, 1245 (2d Cir. 1974)).  The Ninth

8   Circuit has candidly acknowledged that because the Board both

9   determines whether to file a petition and determines the final

10  outcome of the case, "[o]ne might presume from the Board's

11  decision to file a § 10(j) petition that if the facts are found

12  to be as projected in the petition, the Board will decide the

13  case consistently with the petition."  <u>Overstreet</u>, 409 F.3d at

14  1208 n.12.

15       As to the remaining factors, <u>Miller</u> held that if the Board

16  "is likely to prevail on the merits," i.e., more than "a fair

17  chance of succeeding," the court "presume[s] irreparable

18  injury."  19 F.3d at 460.  It appears that this presumption

19  remains at least partially valid after the Supreme Court's

20  decision in <u>Winter</u>.  <u>Winter</u> rejected the prior Ninth Circuit

21  practice of issuing preliminary injunctions on a showing of only

22  the possibility of irreparable injury when the likelihood of

23  success on the merits was great.  <u>Winter</u>'s holding that a

24  preliminary injunction should issue only when irreparable injury

25  was likely does not alter preceding authority which held that,

26  in the NLRA context, such injury would often be likely if not

10

1   certain to occur, and is likely to be irreparable.  <u>Fall River</u>

2   <u>Dyeing & Finishing Corp. v. NLRB</u>, 482 U.S. 27, 49-50 (1987),

3   <u>Brown ex. rel. NLRB v. Pac. Tel. & Tel. Co.</u>, 218 F.2d 542, 544

4   (9th Cir. 1954).  Thus, this court engages in a fact-specific

5   inquiry, but continues to adhere to prior cases which held that

6   certain facts sufficed to demonstrate a likelihood of

7   irreparable injury.  The Ninth Circuit's admonition to "take

8   into account the probability that declining to issue the

9   injunction will permit the unfair labor practice to reach

10  fruition and thereby render meaningless the Board's remedial

11  authority" remains unquestionably valid.  <u>Miller</u>, 16 F.3d at

12  460.

### III. ANALYSIS

14      As an initial matter, this court expresses some surprise at

15  the fact that this case is here at all.  Congress, in enacting

16  the NLRA, established a scheme wherein jurisdiction over unfair

17  labor practice claims rests primarily in the NLRB itself.

18  Pursuant to this scheme, this matter is proceeding before an

19  administrative law judge.  All hearings and briefings in that

20  proceeding have apparently been completed; all that remains is

21  for the administrative law judge to issue a proposed order, and

22  for the Board to rule upon this proposal.  The fact that

23  petitioner has come to this court to seek "temporary" relief is

24  therefore at the very least surprising.

25      This court must assume that the intention behind section

26  10(j) of the NLRA was to provide for relief akin to a

11

1  preliminary injunction, to be sought in the early stages of a

2  case.  While nothing appears to categorically limit section

3  10(j)'s application to such a scenario, it astounds this court

4  to think that even where the specialist administrative law judge

5  has already heard the matter, petitioner presents its case to

6  this court afresh in order to more rapidly secure temporary

7  relief.

8      Petitioner seeks to justify its course of action by

9  indicating that there is likely to be a significant delay before

10 the ALJ files a proposed decision with the Board, and before the

11 Board issues a final order.  Neither party in this proceeding

12 has provided a satisfactory answer as to how long this delay

13 might be in this case, or as to what length of delay is typical.

14 Nonetheless, the court accepts the representation of petitioner,

15 speaking on behalf of the Board, regarding the Board's own

16 proceedings.  Although this court must wonder whether the NRLB's

17 resources spent in litigation of this matter in the district

18 courts would have been better spent in hastening the NLRB's own

19 processing of claims, this possibility is not a ground for

20 denial of the present petition.

21 **A.    Success on the Merits**

22     The complaint alleges that HYS is obliged to recognize and

23 bargain with the Union because HYS is a "successor employer" to

24 Career Systems.  HYS agrees that if it is a "successor employer"

25 within the meaning of the NLRA then it faces these obligations.

26 However, HYS contends that it is not a successor.

12

1    When an employer replaces a previous employer, and a

2  bargaining unit of employees had previously been recognized, the

3  new employer must continue to recognize the bargaining unit if

4  (1) there are appropriately defined bargaining units both before

5  and after the succession, (2) there is continuity of operations

6  with respect to the new unit, and (3) there is continuity of the

7  work force.   NLRB v. Burns Int'l Sec. Servs., 406 U.S. 272,

8  280-81 (1972), N. Mont. Health Care Ctr. v. NLRB, 178 F.3d 1089,

9  1095-96 (9th Cir. 1999); see also Fall River Dyeing & Finishing

10 Corp. v. NLRB, 482 U.S. 27, 41 (1987), NLRB v. Advanced

11 Stretchforming Int'l, Inc., 233 F.3d 1176, 1180 (9th Cir. 2000).

12 This is because "[w]here a union has been recognized or

13 certified as the representative of the employees of the

14 predecessor, and the successor hires a majority of his workers

15 from those employees, a presumption arises that the successor's

16 employees also support the union."   Premium Foods, Inc. v. NLRB,

17 709 F.2d 623, 627 (9th Cir. 1983).   If these factors are met,

18 the new employer is a "successor."   Although a successor

19 employer must recognize and bargain with the representative, the

20 successor employer is not obligated to honor a prior collective

21 bargaining agreement.   See Burns, 406 U.S. at 283 (1972)("While

22 the Board does have power . . . to require employers and

23 employees to negotiate, it is without power to compel a company

24 or a union to agree to any substantive contractual provision of

25 a collective-bargaining agreement.").

26 ////

1    In this case, there is no dispute regarding the continuity

2    of operations, and this requirement is clearly satisfied.  As

3    between Career Systems and HYS, each entered a nearly identical

4    contract with the DOL, and each provides essentially identical

5    services to the trainers at the Center.  J. Ex. 1 at 4-6,

6    General Counsel Ex. 7 at 4-6.  See Fall River, 402 U.S. at 43.

7    Continuity is similarly present between Career Systems and the

8    subcontractor Insights, and, for employees covered by the

9    subcontract, between Insights and HYS.

10    As to continuity of the workforce, this continuity is

11   present when "a majority of the successor's employees were

12   represented by the union."  Premium, 709 F.2d at 627 n.5 (9th

13   Cir. 1983) (citing Burns, 406 U.S. at 278).  Successorship

14   applies only to units that are appropriate for bargaining, and

15   is determined unit-by-unit.  Thus, in cases with multiple

16   bargaining units, as in this case, a separate Burns analysis

17   must be conducted for each unit, and a new employer may be a

18   successor with respect to one unit but not to another, even if

19   all units are represented by the same union.  See, e.g., NLRB v.

20   Hudson River Aggregates, 639 F.2d 865, 869-71 (2d Cir. 1981);

21   Royal Midtown Chrysler Plymouth, Inc., 296 N.L.R.B. 1039 (1989).

22   Here, the parties dispute how the new units should be defined.

23   The court begins by considering the two units recognized under

24   the former employer.

25   ////

26   ////

1          **1.   Residential Advisor Unit**

2          One of the two previously recognized units was the

3 Residential Advisor Unit.  The last negotiation between Career

4 Systems and the Union defined the RA collective bargaining unit

5 to consist of employees with the job titles Resident Advisor I

6 and Resident Advisor II.  General Counsel Ex. 2.  Petitioner

7 contends that this unit remains viable, defining the present

8 unit to include employees hired by HYS on July 1, 2008 with the

9 job titles Resident Advisor Sub; Resident Advisor I, Night;

10 Resident Advisor II, 2nd Prime; and Resident Advisor II, Prime.

11 Based on pay stubs specifying job titles, petitioner contends

12 that on July 1, 2008, thirty HYS employees fell within this

13 unit, excluding six part-time RAs not part of the bargaining

14 unit.  Gen. Counsel Ex. 11; see also General Counsel Ex. 12.  Of

15 these thirty employees, petitioner contends that twenty-six were

16 previously employed by Career Systems and represented by the RA

17 bargaining unit.  This calculation is also based on job titles

18 gleaned from pay stubs.  General Counsel Ex. 9, 10.  Thus,

19 petitioner contends that the newly defined bargaining unit is

20 appropriate and that a majority of the unit's employees were

21 formerly represented, such that there is continuity with respect

22 to the workforce in this unit.

23          HYS first argues that the job titles used by HYS do not

24 alone demonstrate that the proposed HYS RA bargaining unit is

25 appropriate.  "It is well settled that the existence of

26 significant bargaining history weighs heavily in favor of a

1  finding that a historical unit is appropriate, and that the

2  party challenging the historical unit bears the burden of

3  showing that the unit is no longer appropriate." In re Canal

4  Carting, Inc., 339 N.L.R.B. 969, 970 (2003); see also 3750

5  Orange Place L.P. v. NLRB, 333 F.3d 646, 662 (6th Cir. 2003),

6  Trident Seafoods v. NLRB, 101 F.3d 111, 118 (D.C. Cir. 1996).

7  Thus, the ten year bargaining history between Career Systems and

8  the RA Unit employees, along with the collective-bargaining

9  agreement between the Career Systems and the RA Unit, weigh

10 heavily in favor of respecting the historical bargaining unit.

11 HYS has not shown that the former unit was inappropriate, and

12 petitioner may therefore use job titles to determine which

13 employees were formerly represented by the RA Unit.

14    Nor has HYS shown that the proposed definition of the new

15 RA Unit is inappropriate.  Here, the new and former job titles

16 are closely similar or identical, and the work performed by the

17 employer is the same.  Thus, petitioner is likely to succeed in

18 demonstrating that a new bargaining unit may be appropriately

19 defined by the above job titles.

20    Petitioner's argument regarding continuity of workforce is

21 therefore also likely to succeed.  HYS argues that because job

22 titles cannot be used to determine who is and who is not within

23 the unit, it is impossible to know how many employees are in the

24 current unit (for purposes of measuring majority, the

25 denominator of the fraction) or which of these employees were in

26 the prior unit and therefore previously represented (the

numerator of the fraction).  HYS has not provided any authority

for this argument.  This argument is premised on the assumption

that the use of job titles is inappropriate, and as stated

above, petitioner is likely to succeed on this point.  These job

titles indicate that a strong majority of the employees in the

new RA Unit were formerly represented, such that HYS is likely

to bear a successor's obligations with regard to these

employees.

### 2.   The Instructor Unit

The other unit recognized by Career Systems was the

Instructor Unit.  This unit was also historically defined by

employees' job titles, to include "instructors, counselors, and

Career Transition Specialists."  General Counsel Ex. 3.

Petitioner contends that HYS's equivalent job titles are

Academic Instructor, CTST Coordinator, Business Tech Instructor,

Food Service Instructor, Retail Sales Instructor, etc.  Pet'r's

Reply Br. at 7-10.

Here, HYS makes two additional arguments challenging

petitioner's ability to show that a new appropriate bargaining

unit exists.  Most significantly, HYS notes that some, but not

all, of the employees holding the equivalent positions were

covered by the subcontract with Insights, and thus not employed

solely by HYS.  If the new bargaining unit was defined by the

scope of the historic Instructors Unit, this unit would

therefore be a mixed or multiemployer unit, which presents

problems under the NLRA.  Petitioner presents two arguments

1   seeking to circumvent this problem.  In a separate argument, HYS

2   argues that any bargaining unit covering Instructor employees

3   impermissibly mixes professional and non-professional employees.

4   The court concludes that both of HYS's challenges to the

5   appropriateness of the bargaining unit or units are likely to

6   fail, and that continuity of the workforce has been shown.[3]

7            **a.   Mixed and Joint Units**

8        The NLRB's treatment of mixed and joint units is controlled

9   by the Board's decision in <u>H.S. Care L.L.C., d/b/a Oakwood Care

10  Center</u>, 343 N.L.R.B. 659 (2004) ("<u>Oakwood</u>").  In <u>Oakwood</u>, the

11  Board began with the NLRA's definition of appropriate bargaining

12  units.  Section 9(b) of the NLRA provides that:

>           The Board shall decide in each case whether,
>           in order to assure to employees the fullest
>           freedom in exercising the rights guaranteed
>           by this Act, the unit appropriate for the
>           purposes of collective bargaining shall be
>           the employer unit, craft unit, plant unit,
>           or subdivision thereof . . . .

17  29 U.S.C § 159(b).  Based on this language, the Board concluded

18  that the broadest unit contemplated by this provision was an

19  "employer unit" consisting of all employees employed by a single

20  employer.  <u>Oakwood</u>, 343 N.L.R.B. at 661.  Moreover, in practice,

21  a multiemployer unit can "give[] rise to significant conflicts

22  among the various employers and groups of employees

23  _____

24       [3] HYS also repeats its arguments challenging petitioner's
    reliance on job titles.  To the extent that the job title argument
    raises any issues separate from the multi-employer and
25  professional/nonprofessional arguments, the job title argument
    fares no better as applied to the Instructor employees than it does
26  as to the RA employees.

1  participating in the process." <u>Id.</u>  Multiemployer units,

2  consisting of employees of distinct employers, are therefore

3  permissible only when all parties consent to such a unit.  <u>Id.</u>

4  at 662 (citing <u>NLRB v. Truck Drivers Local 449</u>, 353 U.S. 87, 96

5  (1957)).  Thus, Congress has not authorized the Board to impose

6  units encompassing the employees of more than one employer.  <u>Id.</u>

7  at 663 n.24.

8      However, this rule does not apply to units in which two or

9  more employers jointly employ every individual in the unit (as

10  opposed to a unit where one employer employs some employees and

11  another employer employs others).  <u>Id.</u>  Employers are joint

12  employers when they "'share or codetermine those matters

13  governing essential terms and conditions of employment' for

14  bargaining unit employees."  <u>Id.</u> (quoting <u>NLRB v. Greyhound</u>

15  <u>Corp.</u>, 368 F.2d 778, 780 (5th Cir. 1966)).  These terms include

16  "hiring, firing, discipline, supervision and direction."  <u>Solid</u>

17  <u>Waste Servs.</u>, 1993 N.L.R.B. LEXIS 472, 20 (1993).  For purposes

18  of the NLRA, all employees jointly employed by employers A and B

19  "work for a single employer, i.e., the joint employer entity

20  A/B."  <u>Oakwood</u>, 343 N.L.R.B. at 662.

21      <u>Oakwood</u> concerned a combination of the above.  A union

22  sought to represent a single proposed bargaining unit consisting

23  of some employees solely employed by employer A, and of some

24  employees jointly employed by employers A and B.  The NLRB

25  concluded because some employees were employed by A, and others

26  by A/B, "the entity that the two groups of employees look to as

1  their employer is not the same." Id. at 662.  Thus, this unit

2  was a multiemployer or mixed unit, and could not be approved

3  absent the parties' consent.[4]  Id. at 663.

4      In this case, from July 1 through December 31, 2008, some

5  employees who would have been included in the historic Career

6  Systems Instructors Unit were employed solely by HYS, whereas

7  others were employed jointly by HYS and Insights.  Specifically,

8  on July 1, 2008, employees in the counseling, career transitions

9  and career preparation positions, twenty in total, were hired by

10  Insights pursuant to its subcontract.  J. Ex. 4., Hr'g Tr. 78,

11  111.  Although Insights hired these employees, petitioner

12  contends that HYS exercised control sufficient to render them

13  jointly employed by Insights and HYS, and is likely to succeed

14  on the merits of this point.[5]  All other employees that would

15  have been included in the historic Instructors Unit, twenty-nine

16

17

18  _____

19  [4] Oakwood may have held that this situation, or something
    like it, could be permissible without all parties' consent in at

20  least some circumstances.  343 N.L.R.B. at 662 (discussing a
    "joint enterprise" in the "K-Mart cases").  Petitioner has not

21  argued that any such exception applies here, and the court
    leaves clarification of this issue to the NLRB.

22  [5] Although HYS contested joint employer status at oral
    argument, the court notes that petitioner's contention that

23  these employees were jointly employed is likely to succeed.
    Here, HYS had the right to remove and replace employees provided

24  by Insights, and all Insights staff were responsible to and
    under the direction of HYS.  In addition HYS management made

25  recommendations to Insights regarding hiring, acted on behalf of
    Insights, and supervised and directed Insights staff.

26

1  in total, were solely employed by HYS on July 1, 2008.[6]  General

2  Counsel Ex. 11, 12.

3       HYS correctly argues that during the period in which the

4  subcontract was in effect, a bargaining unit consisting of both

5  groups of employees would be prohibited under Oakwood absent the

6  employers' consent.  Petitioner concedes this point, but has not

7  argued for recognition of such a unit.  Instead, petitioner

8  argues that the two groups of Instructor employees may be

9  divided into separate bargaining units, avoiding the Oakwood

10 problem.  Alternatively, petitioner argues that once the

11 subcontract ended, HYS became the successor employer with

12 respect to the former Instructor Unit regardless of whether any

13 valid bargaining unit existed in the interim.

14            **b.    Whether The Former Instructor Unit May Be Divided**

15                   **into Two Units**

16      If the former Instructor Unit may be divided into two

17 bargaining units, one for employees employed by the joint entity

18 HYS/Insights and the other for employees employed solely by HYS,

19 then there is not a multiemployer unit, and Oakwood does not

20 apply.

21      Oakwood did not consider successorship, and thus provides

22 no direct statement as to whether such a division is

23 _____

24      [6] Of these, Petitioner contends that all twenty of the
former group, and twenty eight out of the twenty nine in the

25 latter group, were previously employed by Career Systems in the
Instructors Unit.  General Counsel Ex. 9, 10.  However, if the

26 new bargaining unit is invalid, whether a majority of these
employees were formerly represented is irrelevant.

1  appropriate.  The court first puts successorship aside, and

2  considers whether such a division would be appropriate if made

3  initially.  It appears that such a division obeys, rather than

4  evades, the prohibition established by Oakwood.  Oakwood did not

5  hold that when an employer employs some employees solely, and

6  other employees jointly, none of those employees are entitled to

7  union representation.  Instead, Oakwood held that the text of

8  the NLRA and the practical realities of negotiation prevented

9  such employees from being represented by a single bargaining

10  unit.  By rejecting a union's request to create such a unit,

11  Oakwood implied that the two groups of employees should be

12  represented by separate units.  Thus, if on July 1, 2008,

13  employees had sought initial recognition of these two separate

14  units, it appears that Oakwood would not present a barrier.

15      Turning to successorship, it also appears that if either

16  half of the proposed division were considered individually, that

17  unit's employer would be a successor.  Courts and the NLRB have

18  found successor relationships appropriate even when there are

19  significant changes in the scope and size of the bargaining

20  unit.  Provided that a bargaining unit appropriate under NLRA

21  Section 9(b) may be identified both before and after the change

22  in employers, and that for employees in the latter unit,

23  continuity of operations and workforce are shown, the new

24  employer is a successor.  N. Mont. Health Care Ctr., 178 F.3d at

25  1095-96.  Thus, "successorship obligations are imposed even when

26  only a small subset of the bargaining unit moves over to the

1  successor employer."  Id. (citing Int'l Union of Petroleum &
2  Indus. Workers v. NLRB, 980 F.2d 774, 780 (D.C. Cir. 1992)).

3        The present situation consists of two subsets of a
4  bargaining unit moving to successor employers.  One subset moves
5  to the successor employer that is HYS, and the other subset
6  moves to the joint employer that is HYS and Insights jointly.
7  If these two employers were entirely distinct, then under
8  Northern Mont. Health, there is no doubt successorship
9  obligations would be imposed as to each employer.  HYS has not
10 provided any argument as to why, under Oakwood, the fact that
11 the two employers are not entirely distinct should change the
12 analysis.

13       It may be that in some situations, division of a bargaining
14 unit is inappropriate.  For example, such a division may be an
15 attempt to gerrymander bargaining units to ensure a majority of
16 formerly represented employees fall within a unit.  Because no
17 such problem is evident here, the court leaves the question of
18 such cases to the NLRB.  Absent any evidence of an improper
19 purpose or other reason to prevent this division, Petitioner's
20 argument that such division is proper appears to be consistent
21 with Oakwood and the successorship cases, and this argument is
22 therefore entitled to deference in this preliminary proceeding.
23 Miller, 19 F.3d at 460.

24            **c.   Successorship after January 1, 2009**

25       Because this court concludes that petitioner is likely to
26 succeed on the merits of the above argument, the court does not

23

1  consider Petitioner's alternative argument that, even if there

2  was no valid bargaining unit applicable to Instructor employees

3  from July 1 to December 31 2008, a valid unit existed after

4  January 1, 2009, and that the intervening six months may be

5  ignored in the successorship analysis.

6      However, even when petitioner's arguments regarding the

7  period from July 1 to December 31 2008 are accepted, the effect

8  of Insights' departure is unclear.  Because the NLRB treats a

9  joint employers as a single entity, it may be that Petitioner

10 must show that a valid successor relationship exists between the

11 joint HYS/Insights entity and HYS as a subsequent sole employer

12 of those individuals.  See 3750 Orange Place L.P., 333 F.3d at

13 656 (stating in dicta that "in cases involving multiple changes

14 of ownership, the Board must broaden the inquiry and establish

15 an unbroken chain of successorship across the change of

16 ownership.").  If this is so, Petitioner must show continuity of

17 operations and continuity of workforce subsequent to the

18 succession, yet Petitioner has offered no evidence on these

19 points.  Instead, Petitioner assumes that the transition from

20 HYS/Insights to HYS solely is not a transition between

21 employers.  Although this is not the most obvious reading of the

22 NLRB's precedents, this court is not aware of any case directly

23 addressing this issue, and this court is obliged to be

24 "hospitable" to novel interpretations of the NRLA raised by

25 Petitioner.  Miller, 19 F.3d at 460.  Accordingly, Petitioner

26 has shown a sufficiently likelihood of success on this issue.

1    A related question is whether the divided Instructor Unit

2  may be recombined.  Petitioner contends that the reason for

3  dividing the unit ended with the subcontract, such that the two

4  units may presently be treated as a single unit coextensive with

5  the historical Instructor Unit.  Neither party has provided any

6  authority on this point.  Because this court concludes that

7  Petitioner is likely to show that HYS bears successor

8  obligations to each half of this unit, because the parties have

9  not identified any legal barrier to recombining the unit, and

10 because no apparent harm will result, the court defers to

11 Petitioner's argument that recombination is permitted.

12         **d.   Professional and Nonprofessional Employees**

13    HYS argues that because Petitioner relies on Job titles to

14 establish the appropriateness of the bargaining units there is

15 no evidence as to whether the units include both professional

16 and nonprofessional employees.  Since a unit that includes both

17 professional and nonprofessional employee is not appropriate

18 under Section 9(b)of the NLRA, HYS contends that the unit is not

19 appropriate in this case.  HYS has not presented any evidence to

20 demonstrate that the unit does contain a mixture of professional

21 and nonprofessional employees, and thus has not met its burden

22 of establishing that the historical unit is no longer

23 appropriate.  <u>Indianapolis Mack Sales & Serv. Inc.</u>, 288 N.L.R.B.

24 1123, n.5 (1988).

25 ////

26 ////

**B.    Irreparable Injury**

Petitioner has shown a strong likelihood of success on the merits.  Miller held that in this situation, the court should presume irreparable injury.  19 F.3d at 460.  As discussed above, pursuant to the Supreme Court's decision in Winter, this court discusses whether irreparable injury is likely, informed by prior cases that have applied this presumption.  ___ U.S. at ___, 129 S. Ct. at 374.

Petitioner contends that irreparable injury is likely to be suffered by both employees and the union.  As to the employees, they are injured by the loss of the opportunity to collectively bargain over, and potentially secure improvements to, wages, health and safety provisions, and grievance-arbitration procedure.  HYS observes that the employees' ability to secure such improvements is uncertain, but courts have held that the opportunity to collectively bargain over these things is itself an injury.  See, e.g., Bloedorn v. Francisco Foods, Inc., 276 F.3d 270, 299 (7th Cir. 2001).  This loss of opportunity is virtually certain.  This injury is also irreparable, because a future order to bargain with the Union is "a forward-looking order [that] cannot fully compensate the employees . . . for the variety of benefits that good-faith collective bargaining with the Union might otherwise have secured for them in the present." Id. (reversing denial of temporary relief for this reason).

////

////

1    As to the Union, the Union's Field Representative Ron

2  Jackson[6] declares that employees have refrained from

3  communicating with the Union.  Jackson Decl. at 2.  The Ninth

4  Circuit has held that the risk that union members would "drift[]

5  away" absent a temporary injunction constituted a risk of

6  irreparable harm.  Brown ex. rel. NLRB v. Pac. Tel. & Tel. Co.,

7  218 F.2d 542, 544 (9th Cir. 1954).  When "the new employer

8  refuse[s] to bargain with the chosen representative of the[]

9  [predecessor's] employees" this "'disrupts the employees'

10 morale, deters their organizational activities, and discourages

11 their membership in unions.'"  Fall River, 482 U.S. at 49-50

12 (quoting Franks Bros. Co. v. NLRB, 321 U.S. 702, 704 (1944)).

13 HYS contends that whatever harm the Union may suffer has already

14 been realized, in that the Union currently enjoys no open

15 support.  Nonetheless, Fall River and Brown recognize that the

16 longer a union is prevented from operating, the more difficult

17 the union' task becomes.

18 **C.    Balance of Hardships**

19    The hardships suffered by the employees and union are the

20 same as the injuries described in the preceding section.  These

21 hardships must be balanced against hardships that HYS would

22 suffer if an injunction is issued.

23

24      [6] HYS objects to this declaration as hearsay.  Although it
   may not be appropriate for this court to rule on evidentiary
25 objections in this proceeding, Jackson's statements regarding
   his own inability to communicate with employees and potential
26 union members is not hearsay.

27

1    An injunction obliging HYS to recognize and negotiate with

2  the Union will require HYS to pay the cost of negotiations,

3  including the opportunity cost in the loss of managers' time.

4  These direct monetary costs fall on both parties and alone do

5  not defeat the request for interim relief.  Scott, 241 F.3d at

6  669.  The Ninth Circuit has also rejected the argument that the

7  loss of managers' time tilts the balance of hardships toward the

8  employer.  Id.  "This blanket assertion would lead logically to

9  the conclusion that an interim bargaining order is never

10  appropriate."  Id.

11    An additional possible harm to HYS is the risk that,

12  because HYS must bargain in good faith, HYS will reach an

13  agreement in such bargaining, only for the Board to later

14  conclude that bargaining was not required.  However, this harm

15  is easily avoided.  HYS may in good faith seek to have any

16  agreement entered pursuant negotiations ordered by a temporary

17  injunction include a provision voiding such agreement in the

18  event that the Board finds for HYS.  See, e.g., Asseo v. Pan Am.

19  Grain Co., 805 F.2d 23, 28 (1st Cir. 1986);  Kaynard v. Palby

20  Lingerie, Inc., 625 F.2d 1047, 1054 (2d Cir. 1980).

21    Therefore, the Court finds that the balance of hardships

22  weighs in the favor of Petitioner.

23  **D.   Public Interest**

24    "In § 10(j) cases, the public interest is to ensure that

25  an unfair labor practice will not succeed because the Board

26  takes too long to investigate and adjudicate the charge.  Thus,

28

1  courts must consider the extent to which this interest is

2  implicated under the circumstances of the particular case."

3  Miller, 19 F.3d at 460.  In this case, neither party has

4  identified unusual factors particularly implicating the public

5  interest.  Therefore, under Miller, to the extent that this

6  factor is relevant, it favors petitioner.

7                           **IV. CONCLUSION**

8      There is a high likelihood that Petitioner will prevail on

9  the merits before the NLRB.  There is a likelihood that

10 irreparable injury will occur to the integrity of the collective

11 bargaining process and the Board's remedial authority if a

12 temporary injunction is not granted in this case.  The balancing

13 of the hardships and the public interest both favor the issuing

14 of an injunction.  Accordingly it is just and proper for the

15 Court to grant the requested relief in respect to the RA Unit

16 and the Instructors Unit.

17     Now, therefore, upon the entire record, it is hereby

18 ORDERED, ADJUDGED AND DECREED that, pending the final

19 disposition of the matters now pending before the National Labor

20 Relations Board, Respondent, its officers, representatives,

21 supervisors, agents, servants, employees, attorneys and all

22 persons acting on its behalf or in participation with it, be,

23 and they hereby are, enjoined and restrained from:

24 (a)  refusing to recognize and bargain with the Union as the

25      exclusive collective-bargaining representative of its

26

1   employees in the following appropriate bargaining units of

2   its employees:

3   1)   all employees who were covered by the terms of the

4        June 22, 2006 - June 22, 2009, "Resident Advisors

5        Unit" collective-bargaining agreement between the

6        Union and Career Systems Development Corporation,

7        herein Career Systems;

8   2)   all employees who were covered by the terms of the

9        June 22, 2006 - June 22, 2009, "Instructors Unit"

10       collective-bargaining agreement between the Union and

11       Career Systems  [Exhibit A, paragraphs 2, 7 through

12       9]; and

13  (b)  in any like or related manner interfering with, restraining

14       or coercing employees in the exercise of their rights

15       guaranteed by Section 7 of the Act.

16  It is further ORDERED, ADJUDGED AND DECREED that, pending the

17  final disposition of the matters herein now pending before the

18  National Labor Relations Board, Respondent, its officers,

19  representatives, supervisors, agents, servants, employees,

20  attorneys and all persons acting on its behalf or in

21  participation with it, shall take the following affirmative

22  steps:

23  (a)  upon request, recognize, meet and bargain with the Union as

24       the exclusive collective-bargaining representative of its

25       employees in the appropriate bargaining units, described

26       below, with respect to rates of pay, hours of employment,

30

and other terms and conditions, and if an understanding is
reached, embody such understanding in a signed agreement.
The appropriate bargaining units are:

1)    all employees who were covered by the terms of the
      June 22, 2006 - June 22, 2009, "Resident Advisors
      Unit" collective-bargaining agreement between the
      Union and Career Systems;

2)    all employees who were covered by the terms of the
      June 22, 2006 - June 22, 2009, "Instructors Unit"
      collective-bargaining agreement between the Union and
      Career Systems [Exhibit A, paragraphs 2, 7 through 9].

(b)  post copies of the Court's Decision and Order at
     Respondent's Sacramento, California facilities in all
     locations where notices to employees are customarily
     posted; maintain these postings during the Board's
     administrative proceeding free from all obstructions and
     defacement; grant all employees free and unrestricted
     access to said postings; and grant to agents of the Board
     reasonable access to Respondent's Sacramento, California
     facilities to monitor compliance with the posting
     requirement; and

(c)  within twenty (20) days of the issuance of the Court's
     Decision and Order, file with the Court, with a copy
     submitted to the Regional Director for Region 20 of the
     Board, a sworn affidavit from a responsible official of
     Respondent, setting forth with specificity the manner in

which Respondent is complying with the terms of the decree, including the locations of the posted documents and proof of mailings.

IT IS SO ORDERED.

DATED:   July 7, 2009.


LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT